UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CINDY GREENE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV831 CDP |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Cindy Greene's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. SS 401 *et seq*. and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. Claimant Greene brings this action asserting that she is disabled because she suffers from lupus and fibromyalgia. The Administrative Law Judge concluded that Greene is not disabled. Greene appeals the decision denying her benefits. Because I conclude that the ALJ's decision is supported by substantial evidence, I will affirm the decision.

Procedural History

On October 3, 2006, Cindy Green filed the current application for a Period

of Disability and Disability Insurance Benefits. The Social Security Administration denied Greene's application and Greene timely filed a request for a hearing. Greene appeared and testified at a hearing held before an ALJ on June 12, 2008. The ALJ issued an opinion on June 26, 2008 upholding the denial of benefits. Greene filed a Request for a Review of Hearing Decision, which was denied on March 11, 2010. The ALJ's determination currently stands as the final decision of the Commissioner.

## Testimony Before the ALJ

Greene testified that she was 47 years of age at the time of the hearing and had completed two years of college. She testified that she was an assistant manager at several retails stores in 1999, 2003, and 2004. Greene was unemployed from 1990 to 1994. She testified she left her last job in 2004 because she could no longer stand for 8 hours per day due to swelling in her legs and her job would not allow her to sit. Greene stated in 2006 she visited the Missouri Career Center in an unsuccessful attempt to find a job.

Greene testified that in 2004 or 2005, Dr. Allen White, an ear, nose, and throat specialist, diagnosed her with lupus. She testified lupus limits her ability to walk distances, perform household chores, and she has numbness in her right hand and arm. Greene also testified that she has food allergies which cause stress-

induced breakouts.

Greene testified that her pain level was an 8 on a 10 point scale. The pain was localized in her legs and increases with her stress level. She reported chronic fatigue for the 10 or 12 years prior to her testimony. She testified she needed to rest and take multiple naps during the day because of fatigue. Greene testified she could walk approximately a half block to one block before becoming fatigued and needing to rest. She stated she can sit or stand only for 20 minutes before she has to adjust positions. Greene further testified she can carry a laundry basket, bathe herself, and carry up to four bags of groceries. Her children perform her housework.

The ALJ also heard testimony from Vincent Stock, a vocational expert. Mr. Stock testified that a hypothetical claimant with Greene's educational and professional background who could stand or sit 6 to 8 hours and lift up to 20 pounds could find employment in the national economy. Stock testified that jobs existed in the St. Louis and Missouri areas even for an employee of Greene's qualifications with a sit/stand option and a ten pound lifting restriction. Mr. Stock testified that none of the jobs he identified would be available to the same hypothetical claimant if she had to change position, rest, and stretch every 30 to 45 minutes.

## Medical Records

Greene was treated by Dr. Sherry Shuman, M.D. beginning in early 2005 for reports of diffuse pain and was diagnosed with mild systemic lupus erthematosus ("SLE"). Dr. Shuman characterized Greene's condition as easily controlled through medication and determined that any associated pain did not limit her in any way. Dr. Shuman suggested that Greene could probably work more than her typical 25-hour workweek. In January 2006, Dr. Shuman identified tenderness over trigger points in Greene's shoulders symptomatic of fibromyalgia, but noted the absence of sequelae typically found in lupus.

On November 3, 2006, Dr. Fedwa Khalifa, M.D., performed a consultive examination. Greene reported a long history of illness including a diagnosis of lupus. Greene also reported bilateral leg pain and numbness in her lower extremities so severe that it prevented her from walking at times. Dr. Khalifa performed a physical examination which revealed no limitation of any joint movement.

Greene was first treated by Dr. Mollie Hossfeld, D.O., on March 1, 2007 primarily for blistering to her lips. Dr. Hossfeld's treatment notes indicate that Greene reported she was previously diagnosed with SLE. Hossfeld retained that

diagnosis and requested medical records related to SLE. Greene visited Dr. Hossfeld on March 22, April 13, and July 13, 2007 and reported increasing leg and knee pain.

On November 9, 2007, Dr. Zameena Ali, M.D., a rheumatologist, examined Greene on referral from Dr. Hossfeld. Dr. Ali found that Greene had normal range of motion, normal strength, and no muscle tenderness. He determined that Greene's symptoms were not characteristic of SLE, but rather were the result of fibromyalgia.

On May 20, 2008, Dr. Hossfeld completed a Physician's Assessment for Social Security Disability Claim. Dr. Hossfeld confirmed a diagnosis of SLE with positive ANA. She stated that Greene's subjective reports regarding the severity and duration of her pain indicated that she would need to change positions and stretch every 30 to 45 minutes. As a result of Greene's self-reports of her pain, Dr. Hossfeld concluded that Greene was unable to sustain full-time employment.

Dr. Hossfeld referred Greene to Dr. Hagop Tabakian, M.D. at Creative Solutions in Pain Care on September 29, 2008. Dr. Tabakian diagnosed Greene with generalized aches and pain. He stated he was unsure whether Greene met the diagnostic criteria for fibromyalgia, but that the distinction was unimportant due to the overlap of symptoms between fibromyalgia and lupus. Dr. Tobakian

concluded that Greene was prescribed the correct mediation and that she had fairly good control of her pain.

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. <u>Growell v. Apfel</u>, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. <u>Prosch v. Apfel</u>, 201 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." <u>Singh v. Apfel</u>, 22 F.3d 448, 451 (8th Cir. 2000) (internal citations omitted).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to the exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts when required which is based on a proper hypothetical question.

Brand v Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i)(1); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) and 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the commissioner must decide if the claimant engages in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he or she is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he or she is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, his is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. 20 C.F.R. §§ 404.1520 and 416.920.

When evaluating evidence of subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See e.g., Battles v. Sullivan, 992 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v

Heckler, 739 F.2d 1320 (8th Cir. 1984), which include claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

    1. The claimant's daily activities;

    2. The duration, frequency, and intensity of the pain;

    3. Precipitating and aggravating factors;

    4. Dosage, effectiveness and side effects of medication;

    5. Functional restrictions

Id. at 1322. When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007).

## The ALJ's Findings

The ALJ held that Greene did not suffer from a disability within the meaning of the Social Security Act at any time through the date of the decision. He issued the following specific findings:

1. Greene met the insured status requirements of the Social Security Act though December 31, 2011.

2. Greene had not engaged in substantial gainful activity since September 1, 2006, the alleged onset date (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*,

416.920(b) and 416.971 *et seq.*).

3. Greene had the following severe impairment: mild inactive lupus versus myalgias (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. Greene did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. Greene had the residual functional capacity to do the following: occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; sit 6 hours in an 8-hour workday; stand/walk 6 hours in an 8-hour workday; occasionally climb stairs and ramps; never climb ropes, ladders, and scaffolds; and she should avoid concentrated exposure to extreme cold, hazards of unprotected heights, and vibration. Greene had no manipulative limitations.

6. Greene was capable of performing past relevant work as an assistant retail manager and selling supervisor. This work did not require the performance of work-related activities precluded by Greene's residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

7. Green had not been under a disability, as defined in the Social Security Act,

from September 1, 2006 through the date of the ALJ's decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

The ALJ determined that although Greene had a medically determinable impairment which could have produced some of her alleged symptoms, Greene's statements regarding the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the residual functional capacity evaluation. The ALJ's credibility determinations were based on several findings. First, Greene's doctors, with the exception of Dr. Hossfeld, all agreed that her condition was controlled and did not significantly limit her ability to work. Second, Dr. Hossfeld's finding of Greene's impairment was derived directly and exclusively from Greene's self-reports of her pain. Third, a Physical Residual Functional Capacity Assessment, though not entitled to substantial weight, revealed only moderate physical limitations. Fourth, Greene's medical history contained multiple treatment gaps and was not reflective of an individual completely disabled by illness. Fifth, Greene's reports of her daily activities could not be verified and were inconsistent with the functional limitations suggested by medical evidence. Sixth, Greene's sporadic and limited employment even before the onset of her alleged symptoms suggested a long history of a lack of motivation to work. Finally, the ALJ found Greene's

appearance while testifying to be unpersuasive and noted she showed no evidence of discomfort or pain while testifying.

Discussion

When reviewing the denial of Social Security benefits, a court must determine whether there is substantial evidence on the record to support the ALJ's decision. 42 U.S.C. 405(g). Greene asserts three points of error. First, she argues that the ALJ's decision is not supported by substantial evidence because the ALJ incorrectly relied on the opinion of a non-medical expert. Second, she says the ALJ failed to properly consider fibromyalgia as one of Greene's severe impairments. Third, she claims that the ALJ failed to properly consider the opinion testimony of Dr. Hossfeld.

Greene's first point of claimed error is that the ALJ erroneously relied on the opinion of a non-medical expert, Nancy Dunlap, in determining Greene had residual functional capacity. Specifically, Greene contends that Ms. Dunlap's testimony deserves no weight because, as both parties agree, she is not a medical consultant.

Greene cites <u>Dewy v. Astrue</u>, 509 F.3d 447(8th Cir. 2007) for the proposition that it is reversible error for the ALJ to weigh the testimony of a non-medical expert under the standard for evaluating a medical consultant. In <u>Dewey</u>,

the ALJ ignored medical evidence by the claimant's treating physician in order to rely solely upon the findings of a Residual Functional Capacity Assessment conducted by a lay person, who the ALJ erroneously believed was a physician. Id. at 449-50. The Eighth Circuit reversed stating the ALJ erred in basing his decision to deny benefits upon the Residual Functional Capacity Evaluation while weighing that evidence as though it had been completed by a physician, not as having been completed by a lay person. Id. The court explained that the error was not harmless because absent this mistake the ALJ would have been less likely to disregard the more restrictive opinion of the claimant's treating physician, and so the ALJ might have reached a different ultimate conclusion. Id.

Dewey does not apply to this case for two reasons. First, in Dewey, the ALJ mistakenly believed the author of the report was a physician and consequently applied the wrong legal standard in evaluating his finding. But here the ALJ was well aware the state official who presented the report was not a physician, and therefore did not rely upon her opinion. In fact, the ALJ specifically declined to rely upon her testimony stating that she was "not an acceptable source of medical information and her assessment is not entitled to substantial weight."

Second, in Dewey the ALJ ignored the treating physician in order to

embrace the findings of the lay person with no medical qualifications. In so doing, when that testimony was stricken the ALJ's decision was no longer supported by substantial evidence, and in fact stood opposite to the only medical evidence presented. Much differently, here, the ALJ's decision is based upon the broader medical consensus among the majority of Greene's treating and consulting physicians, as well as upon his own assessment of Greene's credibility.

The ALJ's thorough review of the medical evidence confirms that his decision was supported by substantial medical evidence. The ALJ noted that Dr. Shuman discounted Greene's complaints of pain and had advised Greene that she could increase the number of hours she worked during the week. Similarly, Dr. Khalifa noted after physical examination that Greene had few, if any, physical limitations despite her extensive complaints of pain. In fact, the only medical evidence supportive of Greene's claim of impairment comes from Dr. Hossfeld, who apparently relied solely on Greene's self-reports of pain in her assessment of Greene's limitation.

The ALJ's determination as to Greene's general lack of credibility was also important to his decision. He found that although Greene's condition could reasonably be expected to produce some of her alleged symptoms, her testimony

as to their intensity, persistence, and limiting nature was not credible. The ALJ made several observations which detracted from Greene's general credibility as to the limiting nature of her condition. First, there was a lack of medical evidence to confirm Greene's complaints of severe limitation to daily activities. Second, Greene has a sporadic work history prior to the alleged onset of her disability which indicated a long history of a poor motivation to work. Finally, the ALJ observed that Greene displayed no evidence of any pain and discomfort while testifying.

Given the general medical consensus that Greene's impairment was not substantial and the ALJ's own credibility determinations were well supported, the ALJ's decision is supported by substantial evidence.

Greene next argues that the ALJ erred in not including fibromyalgia as one of Greene's severe impairments. At step two of his evaluation, the ALJ was required to identify whether Greene had a severe impairment. 20 C.F.R. § 404.1520(c). The ALJ found that Greene had the severe impairment of mild inactive lupus versus myalgias. But, Greene argues it was error for the ALJ to fail to recognize and include fibromyalgia as one of Greene's severe impairments.

Greene cites Tilley v. Astrue, 580 F.3d 675 (8th Cir. 2009) for the proposition that it is reversible error for the ALJ to not recognize fibromyalgia as

a severe impairment if there is medical support for that diagnosis. In <u>Tilley</u>, the ALJ discredited the claimant's treating physician's opinion that the claimant could not perform light work even though that opinion was consistent with other medical evidence. <u>Id.</u> at 680. The Eighth Circuit reversed finding that there was no substantial medical evidence contradicting the treating physicians opinion of the claimant's limitations. <u>Id.</u> at 681-82. The Eighth Circuit specifically explained that <u>Tilley</u> was not a case where there was contradictory medical opinion and the ALJ simply elected to accept one medical opinion over another. <u>Id.</u> at 680. Rather, the ALJ disregarded the treating physician's assessment of the claimant's limitation without relying on other medical evidence as a basis for that conclusion. <u>Id.</u>

The key difference between <u>Tilley</u> and this case is that in <u>Tilley</u> there was general medical agreement that the claimant had work limitations, but here there is no medical consensus that Greene has fibromyalgia. Quite the opposite is true. Dr. Shuman diagnosed myalgia with a history of systemic lupus. Dr. Hossfeld diagnosed systemic lupus erthematosus. Dr. Tabakian diagnosed Greene with generalized aches and pains. Dr. Ali also failed to diagnose fibromyalgia, but stated that Greene had tender points consistent with fibromyalgia. Only Dr. Zarmeena diagnosed fibromyalgia. So unlike <u>Tilley</u>, here there was ample

disagreement between Greene's physicians regarding whether she actually had fibromyalgia.

It is also not clear that the difference between Greene's multiple diagnoses was significant. Dr. Tabakian explicitly declined to diagnose Greene with fibromyalgia, but explained that the overlap of symptoms between lupus, generalized aches and pains, and fibromyalgia was so substantial that the question of the exact diagnosis was only academic. The ALJ's findings support this conclusion because even though he found Greene's description of the intensity, persistence, and limiting effects were not credible, he did find that lupus could have produced many of Greene's symptoms, ostensibly including those that would have been produced by fibromylagia. So even if the ALJ's finding that Greene's symptoms were caused by lupus was incorrect, the ALJ still considered those symptoms when analyzing Greene's level of impairment.

Where Greene's physicians disagreed whether she had fibromyalgia, and where the difference in functional symptoms between fibromyalgia and lupus, if any, was minimal, the ALJ did not err in finding Greene did not have the severe impairment of fibromyalgia.

Finally, Greene argues the ALJ erred in disregarding the medical opinion of Dr. Hossfeld. The opinion of a treating physician is generally entitled to

substantial weight, but does not automatically control if there is other evidence that detracts from that opinion. Heino v. Astru, 578 F.3d 873, 880 (8th Cir. 2009). The ALJ may ignore the opinion of the treating physician if other medical assessments are supported by better or more thorough medical evidence. Id. at 879. The ALJ may also discount the opinion of a treating physician when those opinions are conclusory or unsupported by the larger medical record. Brown v. Astrue, 611 F.3d 941, 952 (8th Cir. 2010).

The medical testimony at issue here is the ALJ's consideration and rejection of Dr. Hossfeld's Physicians' Assessment of Social Security Disability Claims. In it Dr. Hossfeld presented her opinion that Greene was unable to sustain full time employment. Greene argues that the ALJ erred in rejecting this medical testimony.

As the ALJ noted, Dr. Hossfeld's opinion was based specifically upon Greene's own subjective reports of pain. In the Physicians' Assessment, Dr. Hossfeld wrote: "per [Greene's] subjective report of severity and duration of pain, she would be unable to sustain full time employment." By her own terms, Dr. Hossfeld's opinion is strictly based upon acceptance of Greene's self-reported symptoms. Acknowledging this as the basis of Dr. Hossfeld's opinion, the ALJ weighed this testimony against both the other medical evidence finding Greene

was not substantially impaired and against the ALJ's own assessment of Greene's credibility. Finding that the majority of medical opinion suggested Greene was not as limited as she claimed, and that Greene's testimony was not credible, the ALJ did not err in considered and rejecting, Dr. Hossfeld's testimony regarding to extent to which Greene experienced physical limitations.

Finding no error, the ALJ's determination that Greene suffers no disability is supported by substantial evidence in the record as a whole. The decision should therefore be upheld.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed. A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 21st day of June, 2011.